Good morning Your Honor, this is Joe Colagiovanni. Pleased to meet you, Your Honor. On behalf of the appellant, Tony Colagiovanni, I would like to reserve three minutes for rebuttal, please. I'll keep it up. I apologize. The issue before you is from an appeal from the District Court where the District Court granted CH2M Hill's motion for summary judgment. They dismissed all the claims. The only issue on appeal is actually related to a breach of contract frame. A breach of contract, excuse me, a breach of contract frame is related to a business conduct agreement. I refer to it in the briefing as a non-retaliation agreement. The business conduct agreement basically was an agreement that Mr. Colagiovanni signed when he was hired and it was contingent upon his hiring that he would agree to follow certain procedures and policies of the company throughout his employment. Part of one of those policies was called the business conduct policy. Part of the business conduct policy was also that he would report other employees that violated the business conduct policy. In return for him reporting those employees, the agreement was stated that CH2M Hill would make sure that if he reported people that he would not be retaliated against. That is basically the subject of the breach of contract claim or claiming that he was retaliated against and the form of retaliation was termination. The district court, when they ruled on the most recent re-judgment, basically didn't even consider the contract frame and looked at this like an at-will employment. There was also a contract that said he was an at-will employee. Correct, correct, excellent. There were several documents and that's what, that's basically what the district court said. The district court said there were all these other documents that he agreed he was an at-will employee. That's a good start. There were those documents and the court looked at those and basically said those negate any inference that this business conduct agreement would have made, would have made to say that this somehow changed his at-will status. And I didn't disagree, I don't disagree with that fact. I don't disagree that Mr. Clojiavani wasn't an at-will employee. He wasn't there. He was in the employment agreement that stated that out of the business conduct agreement, out of the employee handbook, the administration agreement are not contracts that change the at-will relationship. What do you do with that, those provisions? Like I said, I agree with you. They did say that. I don't think we changed the at-will portion. He is an at-will employee. The only thing I think that changes is the fact that they can fire him for any reason whatsoever, however, except if that reason is in retaliation for him turning in someone for violating that policy, they cannot fire him. This is a tribe's right. It says you have to do this or you won't be hired in the first place, and if you don't do this, you will be fired. He has to do this, and if he turns them in, they promise to protect him from retaliation. Okay, so that's the summary. We accept your argument. What's the evidence that you have that a termination was going to be medicated, reported, in the provisional contract? Thank you. You know, he initially, I'll give you the summation instead of the main things, but he initially had turned in Mr. Gilbreth two years prior. He had set up a second time to turn in Mr. Gilbreth with his new boss. They had set up a meeting. About a week before that meeting was scheduled to happen, there was a meeting on a whole other project, and Mr. Gilbreth came back from that project and was talking to his boss. It related to a whole other project and a whole other company, or the city of Las Vegas, actually. The city of Las Vegas, it was their project. They had an issue with this young lady's company Ms. Johnson's company, working with C.H. Trumpet on the project. Mr. Gilbreth came back, and according to his testimony, that's what he told Mr. Nazari. Mr. Nazari sent an email that said the county had a problem. But how does that show that he was terminating in retaliation for reporting Mr. Gilbreth? Well, there was never a conflict. There was never an issue. This was a completely made-up issue to start with. There was no conflict to start with. Nobody that was involved with the conflict had an issue. Nobody was terminating. For us to decide whether or not there was a real conflict, is the question whether they've given a reason, whether they gave a reason that was not related to this alleged reporting of Mr. Gilbreth. Well, you're correct in the fact that normally, under another circumstance, if it wasn't for this agreement, that it wouldn't be for this court to decide if the reason was right or not that he was terminated. Essentially, are you saying that the reason they gave was protection? Correct. They made up a... Mr. Nazari didn't have power. It wasn't like he was the manager of a restaurant and he could just go in and fire a dishwasher. Mr. Kulajivani was the vice president of the company. The only way he could get Mr. Kulajivani out was to create something. And this job was a multimillion-dollar job. I believe the testimony was it was one of the biggest jobs they'd had in quite some time for Clark County. And he created a situation that caused Mr. Kulajivani's termination, and it turns out there was no situation, and nobody else got fired. The husband of the person that allegedly benefited from this conflict took my client's job and was given a bonus. Yet he was a board member on the company that was the conflict company. The lady that had the conflict herself, Ms. Jellison, she didn't get fired. But your client is the one who approved her of being the TBA company, right? She asked if she could do it, and he said yes. He approved it, correct. But again, there was no conflict. So the issue isn't if he approved it or was it wrong or was it right. The delegate complained. My neighbor who ran the project never had an issue. The company stated it was against company policy. So even if the county never complained, if his approval was abolished of company policy, whether we agree with that or not, why isn't that a legitimate reason for his termination? If it was the basis for it, then maybe it was, but it wasn't the basis for the investigation. Even if you read the termination letter, the first reason in the termination letter tells you that a client complained. A client never complained. The investigation was all pretext. Do you want summary judgment for your client or are you asking for trial? I'd like to go back to trial. I believe that there were issues of fact that were never able to be presented because the judge went straight to that will so there's no contract. I'm asking for a cease and temper vote, please. Good morning, your honors. May it please the court. My name is Jill Garcia. I'm here representing CH2M Hill, EFLE in this case, and we're asking respectfully that the court reaffirm that the Nevada District Court's grant of summary judgment on the breach of contract would claim the sole issue before this court, and the sole issue before this court is Atwell Employment. Mr. Cology, if I may, attempts to carve out this agreement somehow, but he can't. The positions today are not by that agreement, but that they won't retaliate on the basis of reporting this contract. Not contractually, your honor. What does that mean? What it means by that is that Mr. Cology, while he is an Atwell employee, we can fire him for any reason that doesn't violate the law, doesn't violate public policy. They don't have a contract with him? They don't. They don't have a contract under business. Why do you tell them that? You could report, if somebody reports sexual harassment on the job, that this is reported, and the person could be fired. Is that your position? That's not my position at all. That's not my position. My position is this. CH2M, this is not, CH2M is not committed to its anti-retaliation provisions. It has them there. Your theory of the contract, someone reports sexual harassment, they can be fired. No, it's not. My theory is it's not contractual in nature. What was her sanity? CH2M requires its employees to agree to report personal and professional conflicts of interest in consideration of their employment. CH2M promised to protect a reporting employee from termination, and yet it also required the employees to sign a separate agreement stating that they could be fired for any reason. That's incredibly confusing as any employee to understand that on one hand, they have a requirement to report, and if you don't like what's being reported, you can just fire me. Your Honor, I'm still not saying they could fire them for any reason. What I'm saying is the retaliation is not found in contract. That's found in statute and common law. And what I mean by that is he is an at-will employee first and foremost, and that is both in this, is through his employment, which is admitted, as well as through the employee administration agreement. So he's an at-will employee. Unless it violates the law, he can be terminated. Where is the termination? He's terminated for discriminating on the basis of sex or something like that. It's unlawful, and you're not saying that you could have drafted out of it. Absolutely. But the provision that says that we won't retaliate when you report misconduct, that's meaningless. I'm not saying it's not enforceable. It's not enforceable in contract. Because also if you take... It's enforceable in common law and statute. We can't retaliate anyway under Title VII. Well, that's the other thing. It's not close in time. There's two reports that are allegedly made. The first report is 2011, the text messages. If we consider that report under this agreement, which I hope we have to take because of summary and judgment, that's two years prior to. I think we can cut that one out. The second one is not actually a report. What he actually says, if we read the testimony, is, I set up a meeting. I was going to go in and tell them these things that I didn't get along with Mr. Gilbreth. Where's the report? And without that report, where's the knowledge that CHUM could even retaliate? A report's never made. Getting back to my point with respect to the retaliation, I can say that's an important issue. CHUM is not saying it doesn't have... You can ignore the law and retaliate. It's six bias, yes, with its provisions. They're just not contractual in nature. You cannot sue us for contract. If we retaliate, for example, he would have to... I don't like the guy. If he tells us he was harassing me, where's his right? If we fire him, it's under Title VII. We can be sued for that. We just can't be sued in contract. The other issue that I wanted to point out with respect to both of the documents, these are also, when you look at them, probably better words would be reaffirmations. Even though they say business contract agreement, if we look at the sub and substance of them, this is the employee saying, I agree to do these things. These are not signed by CHUM and they are not... There's no contractual obligation on CM's part. It's saying, I understand the policies and procedures, and I will abide by them. So the argument that's being set under the one provision that he's suing under, it would be like saying, it's actually the opposite is true. He's saying that I can sue you because you fired me for making this report. And if we look at the reason why he's fired, at least in part, is for failing to report a conflict of interest, at least in part. And if we look at that issue in that same paragraph, we should be able to sue him for that violation. We don't have that ability because the contract doesn't allow for it. What's your response to opposing counsel's observation that the individual who actually engaged in the conflict was redeemed by the company? If you're speaking of Ms. Johnson, she was not redeemed by the company. Both Mr. Colagiovanni... Ms. Johnson isn't being subordinated. She goes to Mr. Colagiovanni because it doesn't feel right to use this DBE. She goes to him repeatedly, and he says, he is a vice president, as counsel has said this morning, can I do this? And he says, it's fine, don't worry about it, don't worry about it, don't worry about it. As a supervisor, he's at a different level. And he said, no, she was not. She was asked, I'm sorry, she was... Both of them were given the option to retire. And she could either close her company and stay with CH2M or resign. She was given that option. She elected to resign. When the first meeting happened with Mr. Colagiovanni, he was given the option to resign. He said no, and he was terminated. Can you explain to me the conflict? Was she... I was a little confused as to what the nature of her bid was. Was she going to bid with this... Her company has the DBE, or whatever they call it, in a separate bid, apart from the bid of CH2M. The work that was going to be done was separate. The company was a DBE. It was a DBE and disadvantaged business. It was not the work that... Not in direct competition. It's not. It would not be in direct competition. The problem was that this is a bigger issue. It's, you know, that's going to happen. It just needs to go through the chain of command. It could have been allowed, potentially, but it should have been reported, and that was the concern that led to, ultimately, the decision. It's just that they didn't have the authority to approve it. Is that what you're saying? Yeah. Okay, I'm saying that. What I'm saying is the plaintiff had to at least write it up through the chain of command, and he failed to do that. Okay. Counsel, don't you agree that a reasonable jury could conclude that Ms. Hattie's e-mail was motivated by a desire to retaliate against Colettiani? No. And the reason I wouldn't agree is because there's no evidence in the record that he had any knowledge of whatever it was that was going to be reported at this meeting that was going to happen in April of 2013. Because the deposition testimony of Mr. Nozzatti, and it's in my brief that I don't have the page number, specifically Mr. Nozzatti's asked, did you know about this meeting?  And when he's pushed, he says something to the effect of, you're telling me there was a meeting? And I'm saying there wasn't one. However, I have no idea what was going to be discussed or if the meeting occurred. And that's his own testimony. The final thing, since I have limited time, since there's no other questions for the panel, the other thing I would really ask the Court to consider, the relief that Mr. Colettiani is asking for is the dissenting opinion in the Bart Mettler case. In Bart Mettler, there's an independent drug and alcohol policy, and there's a confidentiality provision in it. And Mr. Bart Mettler goes through a drug program, and he comes back to work and he feels like it's been violated, and he's fired for another reason. But he says, I was fired in retaliation for complaining about a violation of that confidentiality provision. And the dissenting judge says, I think he does have that right. I think he should have an independent right to sue and for the damages from that. And the Court specifically rejects that opinion, and that's exactly the relief that he's asking for you to do. All right. Thank you. Thank you. If you go down the route like Hugo did, you're basically taking the very little rights that our employees have left away because the one thing that, as an employee, you hope you can count on is a promise or a contract from your employer that says, if you do this, more people do that. But now if we go this way and we say, even if we prove to you this, this piece of paper is worthless, then they actually have nothing. They are basically left at the mercy of an employer. Counsel, what's your response to the housing council's observation that there was no report in the second event that you described? There was a meeting scheduled, but nothing actually happened. So what was there to spark retaliation at that point? The meeting was scheduled because Mr. Rack actually scheduled it based on when he would be in jail.  Rack was Mr. Colagiovanni's supervisor, and I would have a different opinion as to what Mr. Posadi's testimony was. I'll take you to page 137 through 138 of Volume 2 of the excerpts. But I believe the testimony says he is aware that there was a meeting. Is he saying he was aware of what the subject matter of the meeting was? No, and this is obviously after the fact. But, again, I don't, there's no evidence that he knows that, no. All right, thank you, counsel. Thank you. Counsel, please hold arguments. In case this argument means that we get an important decision on the court.
judges: Schroeder, Rawlinson, Logan